```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

```
------------------------------------
                                    :
UNITED STATES OF AMERICA            :
                                    :
            Plaintiff               :
                                    :
            v.                      :3:17-cr-00652-FAB-1
                                    :
RAMON CAMACHO                       :
                                    :
            Defendant               :
------------------------------------
```

## DETENTION HEARING

Was held Before HONORABLE JUDGE SILVIA CARRENO-COLL

U.S. MAGISTRATE JUDGE sitting in San Juan, Puerto Rico,

on December 8, 2017 at 11:34 a.m.

```
 1   APPEARANCES:
 2
 3   FOR THE GOVERNMENT:
 4   OMAR BARROSO, AUSA
 5
 6   FOR THE DEFENDANT:
 7   LARONDA MARTIN, AFPD
 8
 9   ALSO PRESENT:
10   ELISA ABRUNA, USPO
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    THE MAGISTRATE: Ms. Martin, were you able to
2 identify any resources here in Puerto Rico?
3    MS. MARTIN: No, Your Honor, I was not. I would
4 like to first address one of the issues that the Court had
5 in reference to the Pre-trial Services Report.  Mr. Barroso
6 actually brought it to my attention that there hadn't been
7 a change in the report but that was a question that the
8 Court had in reference to a pending matter in the Bronx
9 Criminal Court, so I called this morning and spoke with the
10 clerk. His name is James.  I gave him the case number and
11 asked him to give me the date of birth of Ramon Camacho and
12 he said, "well, why don't you have that in front of you" and
13 I said because it's not in the Pre-trial Services Report but
14 the date of birth for the person is actually 10-5-85 and he
15 said the incident happened on June 27.  That's definitely
16 not Mr. Ramon Camacho's birth date.  Just as he said, he
17 hadn't been to New York in years.
18   But in reference to what we are asking the Court to
19 consider, I've actually spoken with the victim in this case,
20 Katherine Modesto, pretty much every day, Your Honor.  She's
21 called because she's had multiple questions.  She spoke with
22 her uncle who's a Judge and he gave her some suggestions,
23 including flying to Puerto Rico and I told her at this time
24 the cost, that it would cost her to get here for a twenty
25 minute hearing.  It would probably be better for her to talk

1  to the prosecutor and let him be her mouthpiece in the
2  courtroom as to some issues that she had.  She also spoke
3  with another friend who's a public defender and so, what she
4  --
5          THE MAGISTRATE: What are her concerns, her issues?
6          MS. MARTIN: Well, why he has to stay in Puerto
7  Rico.  He has a job.  He makes $2,000 a month.  She called
8  the employer and told him that he's still in Puerto Rico and
9  they just said, "well, let us know when he returns."  So she
10 believes that he still has the job.  She believes that the
11 best place for him to be is actually in Florida with his
12 family.  She's not asking him to return to the house but she
13 said she did go to counseling on either Tuesday or
14 Wednesday.  She spoke with the counselor. Her name is Jill
15 Fisher.  She spoke with Jill Fisher Peterson.  I think that
16 was a marriage counselor that they had gone to.  She told
17 Miss -- yes, it's Jill Fisher Peterson.  She told Ms. Fisher
18 about what happened and she said that the counselor is also
19 willing to work with him, not as a couple but as an
20 individual to deal with whatever issues he had that day.
21    Now, he's willing to attend AA every week and provide
22 proof of it but she just felt that the best place for him to
23 be is actually in Florida.
24     I gave her two telephone numbers to call the prosecutor
25 and let her know what she felt about what happened on the

1  case because she said she hadn't spoken with the prosecutor

2  before our last hearing.  So I told her she needs to call

3  him, talk to him about the case, how it can proceed, blah,

4  blah, blah, and she, her daughter is willing to allow him to

5  live at her home.

6      His house is located only ten minutes from his place of

7  employment.  It is about twenty, twenty five minutes from

8  where she lives but he understands that he can't have any

9  contact with her although she wants to talk to him. I told

10  her again to talk to the prosecutor and now see how that

11  probably goes.

12          THE MAGISTRATE:  All right.  Let me hear Mr.

13  Barroso.

14          MS. MARTIN:  Okay.

15          MR. BARROSO:  Your Honor, we did speak to the

16  victim in this case.  We would not oppose that the court

17  craft a combination of conditions that would insure his

18  appearance in court.  We would not oppose bail.

19      We just want to make sure that the victim, our main

20  concern is the safety of the victim but other than that,

21  Your Honor, we, as long as there is a suitable third party

22  custodian and if such as treatment for his alcohol addiction

23  could be crafted into the conditions of release and we would

24  not be opposed to bail being granted in this, Your Honor.

25          THE MAGISTRATE:  All right.  Let me talk to Ms.

1  Abruna.
2             (Sidebar with USPO Abruna off-the-record)
3             (In open court(
4        THE MAGISTRATE: Ms. Martin.
5        MS. MARTIN: Yes, Your Honor.
6        THE MAGISTRATE: Who else resides at his daughter's
7   house?
8        MS. MARTIN: She had mentioned an aunt who is
9   retired and she was giving me several names.  She even
10  considered herself.  I told her that you probably wouldn't
11  like that because it's just too soon and that.  I told her
12  she needs to think about that because, you know.
13       THE MAGISTRATE: Is there a protective order in
14  place right now or not?
15       MS. MARTIN: No, Your Honor.
16       THE MAGISTRATE: Okay.
17       MS. MARTIN: The only person she said she had
18  spoken with before we had our first hearing was the security
19  from the boat and when they reported what happened, that she
20  said she --
21       THE MAGISTRATE: Okay, but who else resides at the
22  daughter's house?
23       MS. MARTIN: I don't know.
24       THE MAGISTRATE: You may ask your client.  Ms.
25  Martin, maybe in this phone call, I didn't understand.  I

1 understood that you offered his daughter.

2     MS. MARTIN: No, no, the victim's daughter.

3     THE MAGISTRATE: That's not a good plan, not at
4 this time.

5     MS. MARTIN: It's in a separate house, Your Honor.
6 It's not like he would be living with the daughter.  He
7 would just be living at that house.

8     THE MAGISTRATE: No.  Who else would be available
9 for him to be housed with?

10     MS. MARTIN: That's the -- the only name she
11 offered, Your Honor, was her aunt who's retired and her
12 daughter.

13     THE MAGISTRATE: And he was residing with Ms.
14 Modesto?  So he doesn't have a place.

15     MS. MARTIN: But they were married, yes.

16     THE MAGISTRATE: Okay, so he doesn't have a place
17 of his own and no family members on his side.

18     MS. MARTIN: No, Your Honor, not at this time.

19     THE MAGISTRATE: How old is this lady, the
20 daughter?

21     MS. MARTIN: Which one, the victim or the daughter?

22     THE MAGISTRATE: No, the daughter.

23     MS. MARTIN: Oh, I should have known you were going
24 to ask that question.  Oh, twenty four.  Twenty four, Your
25 Honor.

1         THE MAGISTRATE: Anyone else residing in that

2 house?

3         MS. MARTIN: No, Your Honor.  I asked her that

4 question. I figured we had to know that.

5         THE MAGISTRATE: And there are no other places

6 where he can stay.

7         MS. MARTIN: No, Your Honor.

8           (At the Bench)

9           (Discussion off the record)

10           (In open court)

11         THE MAGISTRATE: All right.  Back on the record.

12 Ms. Martin, I'm inclined to grant bail and craft conditions

13 in Florida.  Nevertheless, I would need Mr. Camacho to find

14 an apartment, a studio or something for at least six months,

15 for him to reside.

16    Florida will provide courtesy supervision.  He will

17 reside somewhere else, not with his spouse, not with his

18 spouse's daughter, someplace else.  He will be subject to

19 drug testing, mental health treatment and if the evaluation

20 discloses that he needs drug treatment, then that would be

21 included also and he needs to execute a $5,000 unsecured

22 bond.

23         MS. MARTIN: Your Honor, the Court said he may find

24 an apartment.  Is the Court going to give him time to go to

25 Florida and find an apartment?  Do you want the victim to

1  find an apartment for him?

2  THE MAGISTRATE: Well, is there anyone that can
3  take care of -- well, the daughter may do so.  The daughter
4  may find an apartment or a studio or somewhere for him to
5  reside and take care of the logistics of getting this
6  rental.  It can be a short-term rental.  It can be for, you
7  know, month to month basis, but I think it's not a suitable
8  third party custodian for the victim's daughter to be housed
9  with him at this time.

10  MS. MARTIN: You said you don't think or –

11  THE MAGISTRATE: I don't think so.

12  MS. MARTIN: What about that aunt that's retired?

13  THE MAGISTRATE: Whose aunt?

14  MS. MARTIN: The victim's aunt.

15  THE MAGISTRATE: But they're all family members.
16  I mean.

17  MS. MARTIN: He says it's like more of a friend
18  that she calls her aunt but it's still, you know.

19  THE MAGISTRATE: Mr. Barroso, you were going to
20  chime in.

21  MR. BARROSO: Well, he doesn't have any family in
22  Florida because when I spoke to the victim, she specifically
23  told me that he had a few; that he had numerous family in
24  Florida and that she wouldn't mind that he go stay with any
25  of them, even if they lived --

1     THE MAGISTRATE: Or a good friend.  Someone that
2  can house him for six months and maybe the case will be
3  resolved by then or we can revisit the condition.  Mr.
4  Camacho, I'm just trying not to set you up for failure.  I'm
5  trying to make this as smooth as possible.  Craft conditions
6  that you can live with and comply with and you think that
7  it's going to be fine.  She thinks it's going to be fine but
8  I don't know what's going to happen when you see each other
9  again.  You know, you may turn volatile.  You need help.  I
10 think you do need help to deal with anger management issues,
11 with alcohol use and abuse issues.  That sort of thing.
12  That's why we're all working here to try to find the most
13 suitable situation for you to comply with the conditions I'm
14 about to impose.
15     MS. MARTIN: If we can find a third party custodian
16 that's not her family, then the Court will be okay.
17     THE MAGISTRATE: Or a place of his own because
18 I'm not --
19     MS. MARTIN: I think that's the fair.
20     THE MAGISTRATE: He's not going to be home
21 detained.  He's not going to be home incarcerated.  You will
22 continue working.  He will be supervised by someone in
23 Florida and standard conditions of release, mental health,
24 substance abuse.  I'm sorry, drug testing and treatment, if
25 necessary, and $5,000 unsecured.

1    I think these conditions are very non-restrictive in
2 nature.  It's just the fact that because there's no, right
3 now, no order of any court not to get close to the victim,
4 we need to try to avoid any instances of confrontation or
5 issues and that's what I'm trying to do.
6         MS. MARTIN: She wanted me to ask the Court for
7 permission to at least, well, she said she would put money
8 but she wants permission to call him and I told her, you
9 know, that obviously it's her decision but she still wanted
10 me to ask the Court if it was okay for him to call her
11 because she wanted to at least –
12         THE MAGISTRATE: Do you oppose Mr. Barroso?
13         MR. BARROSO: I do not, Your Honor.  He told me
14 he's her fiancé.
15         THE MAGISTRATE: All right, yes, they can talk.
16 They can talk.
17         MS. MARTIN: Your Honor, in follow up, let's make
18 sure we're talking about -- is it a third party custodian or
19 is he allowed to personally –
20         THE MAGISTRATE: I'm sorry.  If he's allowed to --
21         MS. MARTIN: Is it a third party custodian
22 requirement or is he allowed to file the $5,000 unsecured?
23         THE MAGISTRATE: $5,000 unsecured and he needs to
24 reside somewhere other than a place where any of the
25 victim's family members reside and that condition is to be

1  complied with before his release.  He needs to provide an
2  address.  "I'm going to be living at this place" before he's
3  released.  So can you make some phone calls and find a
4  place?
5  　　　　　MS. MARTIN: Yes, Your Honor, we'll work on it.
6  　　　　　THE MAGISTRATE: All right.  Thank you.  Good luck.
7  　　　　　(The hearing ended at 11:48 a.m.)

```
 1  U.S. DISTRICT COURT    )
 2  DISTRICT OF PUERTO RICO)
 3
 4      I certify that this transcript consisting of 13 pages
 5  is a true and accurate transcription to the best of my
 6  ability of the proceedings in this case before the Honorable
 7  Silvia Carreno-Coll, on December 8, 2017.
 8
 9
10
11
12  S/Boabdil Vazquetelles
13  Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```